IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DENISE ANTONIEWICZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 09-116-SLR |
| | ) |
| MICHAEL ASTRUE, Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

Denise Antoniewicz, Pro Se Plaintiff. Lincoln, Delaware.

Charles M. Oberly, III, Esquire, United States Attorney, District of Delaware, and Patricia A. Stewart, Esquire, Special Assistant United States Attorney, District of Delaware. Counsel for Defendant. Of Counsel: Eric P. Kressman, Esquire, Regional Chief Counsel and Thomas C. Buchanan, Esquire, Assistant Regional Counsel, of the Office of General Counsel, Philadelphia, Pennsylvania.

**MEMORANDUM OPINION**

Dated: March 10, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Denise Antoniewicz ("plaintiff"), who appears pro so, appeals the decision of Michael J. Astrue, the Commissioner of Social Security ("the Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The court construes, collectively, several letters filed by plaintiff asking the court to award her DIB, as a motion for summary judgment. (D.I. 6, 15, 17, 19) The Commissioner filed a cross-motion for summary judgment, requesting the court to affirm his decision and enter judgment in his favor. (D.I. 21, 22) The court has jurisdiction pursuant to 42 U.S.C. § 405(g).[1]

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for DIB on February 16, 2006, alleging disability since December 15, 2000 due to depression, neuropathy, degenerative joint disease, and diabetes. Plaintiff was 48 years old on her date last insured, December 31, 2005. Her initial application was denied on February 20, 2007, and her request for reconsideration was denied on October 20, 2007. (D.I. 12, at 12, 2126, 37, 54-58, 67-68)

---

[1] Under § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision .... Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .

42 U.S.C. § 405(g).

Thereafter, plaintiff requested a hearing, which took place before an administrative law judge ("ALJ") on May 21, 2008. Counsel represented plaintiff at the hearing, and plaintiff and a vocational expert ("VE") testified during the hearing. Plaintiff's counsel stated that plaintiff did not claim disability under the Listing of Impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ's written decision, dated October 1, 2008, found plaintiff was not disabled during the relevant time frame within the meaning of the Social Security Act. *(Id.* at 14-22) More specifically, the ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2005.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 15, 2000 through her date last insured of December 31, 2005 (20 C.F.R. §§ 404.1520(b), 404.1571 et seq.)
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; diabetes mellitus with neuropathy; obesity; and depression (20 C.F.R. § 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).
>
> 5. Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could stand/walk for six hours and sit for six hours for a combined total of eight hours a day; could occasionally stoop, crouch, kneel, and balance; could never climb ladders, ropes and scaffolds or work around dangerous heights or moving machinery; could never crawl or squat; would need to avoid concentrated exposure to cold; would require a sit/stand option; could understand, remember and carry out simple instructions and could concentrate and persist adequately at that level of complexity; and would require limited interaction with the general public.

6. Through the date last insured, the claimant was unable to perform her past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on June 16, 1957 and, on the date last insured, was 48 years old which is defined as a younger individual age 18-49 (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. pt. 404, subpt. P, app. 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1560(c), 404.1566).

11. The claimant was not under a disability as defined in the Social Security Act, at any time from December 15, 2000, the alleged onset date, through December 31, 2005, the date last insured (20 C.F.R. § 404.1520(g)).

(D.I. 12, at 12-23)[2]

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but found that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment and not supported by the objective findings on examination and the objective medical evidence of record. The ALJ noted that none of plaintiff's treating physicians indicated that she was disabled or assigned specific limitations regarding her ability to engage in work-related activities. In addition, the ALJ gave great weight to the

---

[2]The ALJ's rationale, which was interspersed throughout the findings, is omitted from this recitation.

opinion of Dr. Golish ("Dr. Golish"), a state agency physician who assessed plaintiff with certain restrictions.

With respect to depression, the ALJ disagreed with the State agency's consultant, and found sufficient evidence in the record to determine that plaintiff suffered from a depressive disorder prior to the date last insured. The ALJ gave little weight to plaintiff's current mental health treater who opined that plaintiff was incapable of working inasmuch as his treatment did not begin until almost one year after plaintiff's date last insured.

Plaintiff sought review by the Appeals Council, and her request for review was denied on January 22, 2009. (Id. at 4-6) On February 1, 2009, plaintiff filed the current action for review of the final decision denying her application for DIB. (D.I. 1)

### B. Documentary Evidence

#### 1. Mental health impairments

Plaintiff has a history of depression beginning in 1995 when a baby died from injuries after plaintiff accidently struck the child with her car. In October 2002, plaintiff was diagnosed with dysthymia and recurrent major depression, rule out post traumatic stress disorder. Her score on the Global Assessment of Functioning Scale ("GAF") was assessed at 56.[3] Plaintiff received regular counseling at Coastal Therapeutic Services

---

[3]The GAF scale is used to report the "clinician's judgment of the individual's overall level of functioning" in light of her psychological, social and occupational limitations. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. text rev. 2000). A GAF of 41 to 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. A GAF of 51 to 60 indicates moderate symptoms or moderate difficulty in social or occupational functioning. *Id.* at 34.

from 2002 through 2006. Treatment notes from Mid-Atlantic Family Practice from January 2004 through plaintiff's date last insured indicate her mental status was alert, she was cooperative and well groomed, well nourished and developed. However, she remained depressed with a decreased affect. (D.I. 12 at 113-14, 133, 189-194, 196, 239, 242, 245, 248, 259, 263, 268, 271-279, 285-88)

On September 11, 2007, approximately two years after her date last insured, plaintiff was evaluated by psychiatrist Dr. Joseph Bryer ("Dr. Bryer"). Upon mental status examination, plaintiff was alert and cooperative, although also anxious and tearful throughout most of her session. She was fully oriented and appeared to be of average intelligence. There was no psychomotor disturbance or abnormal involuntary movements, her speech was relevant, coherent, and spontaneous, and she had a constricted affect and low mood. There were no suicidal or homicidal ideas, intent, or plan, or hallucinations or delusions. Dr. Bryer diagnosed major depression, single episode, severe, and post-traumatic stress disorder, complicated by chronic pain syndrome. (D.I. 12 at 369-70)

Dr. Nathan Centers ("Dr. Centers"), whom plaintiff had been seeing since December 2006, completed a mental impairment questionnaire on May 14, 2008. He indicated that plaintiff was "unable to meet competitive standards" in several functional areas and had "no useful ability to function" in several other areas. Diagnoses included major depressive disorder and a current GAF of 45.[4] She received psychopharmacological treatment to improve mood and decrease anxiety. Her prognosis was

---

[4]See n.3, supra.

characterized as poor/guarded and Dr. Centers expected limited change. Subsequent to her date last insured, plaintiff continued with treatment for depression that is managed to some degree with medication. (D.I. 12 at 371-389, 440-45)

### 2. Physical impairments

Plaintiff sustained a work-related injury on January 13, 2000 and has been unable to work since the injury. An x-ray taken in January 2000 indicated mild degenerative changes in the lumbosacral spine. She complains of lower back pain radiating down both legs, as well as neck and middle back pain. Her complaints of pain resulted in a referral to Dr. Gabriel Somori ("Dr. Somori") for pain management. (D.I. 12 at 196, 215, 216, 218, 234, 289-324)

In 2001, plaintiff was diagnosed as obese. Her current body mass index is 33.3. Plaintiff was diagnosed with new-onset diabetes mellitus, type 2, uncontrolled in November 2003. In November 2004, her condition was assessed as "diabetes mellitus, uncomplicated . . . uncontrolled." A 2005 EMG revealed the presence of generalized peripheral neuropathy consistent with diabetes. The diabetes has been controlled from 2006 through 2008. (D.I. 12, at 105, 132, 157, 195, 254, 404, 408, 411, 414)

An MRI of the lumber spine in March 2004 revealed mild multi-level spondylosis, producing mild canal and mild to moderate foraminal stenosis at L5-S1. Less prominent changes were noted at L3-4 and L4-5, which did not appear to be associated with nerve root displacement or impingement and not significant with respect to lumbar radiculopathy. A June 2004 MRI of the cervical spine revealed moderate right-sided foraminal stenosis at C5-6. There was no spinal cord impingement. An October 2004 MRI of the thoracic spine showed moderate degenerative disc disease, producing mild

canal and foraminal stenosis throughout the thoracic spine, with no spinal cord or nerve root impingement. Plaintiff was administered numerous medications for pain management. In June 2005, Dr. Somori referred plaintiff to Dr. Ronald Sabbagh ("Dr. Sabbagh") for an evaluation. (D.I. 12 at 187-188, 302)

As of June 2005, plaintiff continued with complaints of back pain. (Id. at 196). MRI's of the lumbar and thoracic spine taken in June 2005 showed mild degenerative changes, with no disc herniation, nerve root deviation, stenosis, or canal or nerve root compromise. Dr. Sabbagh noted plaintiff's "essentially normal MRI," and diagnosed chronic back pain. Upon examination, plaintiff could walk on her heels and toes with a normal gait and had only mild tenderness on palpation of the lumbar spine. Her straight leg-raising test was negative. Plaintiff had full and symmetric strength to her lower extremities. Dr. Sabbagh concluded that back surgery was not indicated because there was "no significant anatomic pathology." Because there was no nerve root compromise, Dr. Sabbagh was "a little perplexed" why plaintiff had numbness and tingling in her legs. Dr. Sabbagh did not prescribe any medications and recommended daily activities as tolerated. He reached the same diagnostic impressions in August 2005 and recommended that plaintiff continue with pain management. (D.I. 12 at 182-185, 195-196)

Plaintiff was treated at Coastal Pain Management from 2002 through 2006. Dr. Somori observed that plaintiff used a cane at the January 11, 2006, and she continued to use a cane at subsequent visits. Coastal Pain Management records indicate ongoing narcotic and other prescription medications for pain management. An MRI of the lumbar spine conducted in March 2008 revealed small focal right lateral disc protrusion

at L3-L4 and prominent degenerative changes and slight disc bulging at L5-S1. (D.I. 12 at 289-325, 399)

On February 19, 2007, Dr. Golish, a state agency physician, conducted a physical residual functional capacity assessment based upon a review of the objective medical evidence. He indicated that plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours, and sit for about six hours, in an eight-hour workday; and push and pull with no further limitations. Plaintiff is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and no climbing of ladders, ropes, or scaffolds. In addition, plaintiff is to avoid concentrated exposure to extreme cold and extreme heat as well as workplace hazards, such as machinery and heights. (D.I. 12 at 337-340)

### C. Hearing Before the ALJ

#### 1. Plaintiff's testimony

Plaintiff is the guardian of her grandson who lives with her and her spouse. Plaintiff last worked as a nursing assistant (i.e., CNA) in December 2000. Plaintiff testified that she left the position because she was accused by a nurse of neglecting her patients, being slow in her work, and the nurse harassed her after she sustained a work-related back injury on January 13, 2000. Plaintiff filed for, but was denied, worker's compensation benefits following the injury. (D.I. 12 at 451, 453, 456, 458-59, 462, 463)

Plaintiff testified she is disabled due to chronic back pain which limits her activities, depression, and post traumatic stress disorder due to a 1995 motor vehicle

accident that resulted in the death of a child. Her pain is excruciating and radiates down both legs. She also has neuropathy. Plaintiff must stop and rest when performing housework. She is able to bathe and dress herself. Plaintiff stays mostly in her bedroom, does not want to come out, does not "bother with anybody," and does not leave home to visit relatives or neighbors  (D.I. 12, 250-451, 453, 456, 458-466)

### 2. Vocational expert testimony

The VE classified plaintiff's past work as a CNA as semi-skilled and medium in exertion. The ALJ asked the VE if there were any jobs that could be performed by a hypothetical individual aged fifty, with a high school education; who could read and write and work with numbers; lift ten pounds frequently and twenty pounds occasionally; stand and walk for six hours and sit for six hours in an eight-hour workday; occasionally stoop, crouch, kneel, and balance; who could not climb ladders or scaffolds; who must avoid dangerous heights and moving machinery; who could do no crawling or squatting; who must avoid concentrated exposure to cold temperatures; who could understand, remember, carry out simple instructions and concentrate and persist adequately at that level; who could use a sit/stand option; and who must avoid or limit interaction with the general public. The VE responded that an individual with those limitations could perform a light, unskilled mail clerk non-postal job and a light, unskilled office helper job. (D.I. 12 at 467-468)

The VE was given a second hypothetical if a fifty year old person, with a high school education who needed a sit/stand option and light work, could sustain work in the national economy when including all the information in plaintiff's file, giving full credibility to every complaint of pain, anxiety, hesitance for being around people on any

kind of a sustained basis, not wanting to deal with strangers, depression, post traumatic stress syndrome, trauma, flashbacks, major depression, pain, physical pain, bad pain in back, pain radiating to the feet, and problems generally thought to be associated with diabetes. Based upon the hypothetical, the VE opined that such a person would not be able to sustain work in the national economy, noting the particular factors associated with pain, and the severity in which it was described, as well as depression. (D.I. 12 at 469)

## III. STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. *See Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. *See id.* In other words, even if the reviewing court would have decided the case differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See id.* at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. Substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). The Supreme Court has embraced this standard as the appropriate standard for determining the availability of summary

judgment pursuant to Federal Rule of Civil Procedure 56.  The inquiry performed is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.  If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (internal citations omitted).  Thus, in the context of judicial review under § 405(g), "[a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion."  *See Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  Where, for example, the countervailing evidence consists primarily of the plaintiff's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record."  *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

## IV. DISCUSSION

### A. Regulatory Framework

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." *See* 20 C.F.R. §§ 404.1505. The claimant bears the initial burden of proving disability. *See* 20 C.F.R. §§ 404.1512(a); *Podeworthy v. Harris,* 745 F.2d 210, 217 (3d Cir. 1984). To qualify for disability insurance benefits, the claimant must establish that she was disabled prior to the date she was last insured. *See* 20 C.F.R. § 404.131; *Matullo,* 926 F.2d at 244.

To determine disability, the Commissioner uses a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel,* 186 F.3d 422, 427-28 (3d Cir. 1999). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five. *Smith v. Commissioner of Soc. Sec.,* No. 09-2983, 2010 WL 4720881, at *1, – F.3d – (3d Cir. Nov. 22, 2010). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(I) (mandating a finding of

non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. See 20 C.F.R. § 404.1520(a)(4)(ii) (requiring finding of not disabled when claimant's impairments are not severe). If claimant's impairments are severe, at step three the Commissioner, compares the claimant's impairments to a list of impairments (the "listing") that are presumed severe enough to preclude any gainful work.[5] See 20 C.F.R. § 404.1520(a)(4)(iii); Plummer, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. See 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. See 20 C.F.R. § 404.1520(d).[6]

At step four, the Commissioner determines whether the claimant retains the RFC to perform her past relevant work.[7] See 20 C.F.R. § 404.1520(a)(4)(iv) (stating a claimant is not disabled if able to return to past relevant work). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." Plummer, 186

---

[5] Additionally, at steps two and three, claimant's impairments must meet the duration requirement of twelve months. See 20 C.F.R. § 404.1520(a)(4)(ii-iii)

[6] Prior to step four, the Commissioner must assess the claimant's residual functional capacity ("RFC"). See 20 C.F.R. § 404.1520(a)(4). A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment[s]." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)).

[7] During the hearing, plaintiff's counsel indicated that plaintiff did not claim disability under the listing of impairments and, accordingly, the ALJ proceeded to step four of the sequential evaluation.

F.3d at 428. If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. See 20 C.F.R. § 404.1520(g) (mandating that a claimant is not disabled if the claimant can adjust to other work); Plummer, 186 F.3d at 428. As previously stated, at this last step the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. See Plummer, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC.]" Id. This determination requires the Commissioner to consider the cumulative effect of the claimant's impairments and a vocational expert is often consulted.

### B. Analysis

Plaintiff filed her complaint pro se and, therefore, the court must liberally construe her pleadings, and "apply the applicable law, irrespective of whether [she] has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Department of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)); see also Leventry v. Astrue, Civ. No. 08-85J, 2009 WL 3045675 (W.D. Pa. Sept. 22, 2009) (applying same in the context of a social security appeal). Plaintiff sets forth a litany of her ailments but, other than to state that she is telling the truth about her condition, assigns no error to the ALJ. Plaintiff asks the court to award her DIB benefits. The

Commissioner contends that substantial evidence supports the decision in this case and, therefore, summary judgment is appropriate.

After reviewing the decision of the ALJ in light of the relevant standard of review and the applicable legal principles, the court concludes that the ALJ's decision is supported by substantial evidence. Plaintiff has several treating sources. In determining the weight to afford to the opinion of a treating source, the ALJ must weigh all evidence and resolve any material conflicts.[8] *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Fargnoli*, 247 F.3d at 43 (recognizing that the ALJ may weigh the credibility of the evidence). The regulations generally provide that more weight is given to treating source opinions; however, this enhanced weight is not automatic. *See* 20 C.F.R. § 404.1527(d)(2). Treating source opinions are entitled to greater weight when they are supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with "other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *see Fargnoli*, 247 F.3d at 43. "Although a treating physician's opinion is entitled to great weight, a treating physician's statement that a plaintiff is unable to work or is disabled is not dispositive." *Perry v. Astrue*, 515 F. Supp. 2d 453, 462 (D. Del. 2007). The ALJ may discount the opinions of treating physicians if they are not supported by the medical evidence, provided that the ALJ adequately explains his or her reasons for rejecting the opinions. *See Fargnoli*, 247 F.3d at 42. When a

---

[8]The court notes that the ALJ's review and determination of weight for a treating physician's opinion is not unlimited. "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (citations omitted).

treating physician's opinion conflicts with a nontreating physician's opinion, the Commissioner, with good reason, may choose which opinion to credit. *See Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000).

If a treating opinion is deemed not controlling, the ALJ uses six enumerated factors to determine its appropriate weight. *See* 20 C.F.R. § 404.1527(d) (2-6). The factors are: (1) length of the treatment relationship; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *See id.* The supportability factor provides that "[t]he better an explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(d)(3). Similarly, the consistency factor states that the "more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527(d)(4).

At step four, the ALJ determined that plaintiff could no longer perform her past relevant work and proceeded to step five of the sequential evaluation. The ALJ considered plaintiff's complaints of pain in conjunction with the objective medical evidence, and found her statements not credible. Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, *see Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529), the ALJ must still explain why he is rejecting the testimony. *See Van Horn v. Scweiker,* 717 F.2d 871, 873 (3d Cir. 1983) (court set aside an ALJ's finding because he failed to explain why he rejected certain non-medical testimony). Here, the ALJ provided a detailed explanation of why he rejected plaintiff's testimony regarding the extent of her

pain, most notably that her subjective complaints of pain were not supported by the objective findings on examination. The evidence in the record supports this finding, and plaintiff has failed to show other evidence which contradicts or undermines the ALJ's conclusion. *See* 20 C.F.R. § 404.1529(c); *Schaudeck v. Commissioner of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir.1999); SSR 96-7p (explaining that the Social Security regulations provide that allegations of pain and other subjective symptoms must be supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony).

In addition, the ALJ considered plaintiff's physical impairments in conjunction with Dr. Golish's physical residual capacity assessment and the objective medical evidence. The ALJ assigned great weight to the assessment noting that Dr. Golish considered the medical evidence prior to plaintiff's date last insured and further noting that plaintiff's statements regarding the effects of her symptoms were inconsistent with the residual functional capacity assessment. In relying upon Dr. Golish's assessment, the ALJ assigned the limitations in the assessment, but also included certain limitations in light of plaintiff's testimony regarding her pain.

The ALJ also considered the medical evidence and determined that plaintiff suffered from a depressive disorder prior to the date last insured. In doing so, he rejected the finding of the State agency consultant and considered the records of plaintiff's treating physicians during the relevant time-period. The ALJ accorded little weight to the opinions of plaintiff's current treating psychiatrist on the basis that he did not begin to treat her until almost one year after her date last insured. Notably, the ALJ

incorporated plaintiff's depressive symptoms that he found credible in fashioning his hypothetical question to the VE; he included the restrictions of simple instructions and limited interaction with the general public. See *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (the ALJ is only required to include the limitations that are supported by the record in the hypothetical to the VE); see also *Ramirez v. Barnhart*, 372 F.3d 545, 555 (3d Cir. 2004) (where an impairment would not limit a claimant's ability to perform the tasks required by the employment, then the ALJ may omit the impairment from the hypothetical). Even with those inclusions, the VE found jobs existed in significant numbers in the national economy that plaintiff could perform. Accordingly, the ALJ concluded that plaintiff was not under a disability from the alleged onset date to the date last insured. Based upon the foregoing, the court concludes that the ALJ's decision is supported by substantial evidence.

## V. CONCLUSION

For the reasons stated, the ALJ's decision is supported by substantial evidence. Plaintiff's motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted.

An appropriate order shall issue.